IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANNE M. HART,

                           Plaintiff,                    OPINION AND ORDER

        v.
                                                         08-cv-07-bbc
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Because Judge Shabaz will be convalescing from shoulder surgery for an extended

period, I have assumed administration of the cases previously assigned to him, including this

one.

        Plaintiff Anne M. Hart seeks judicial review of a decision of the Commissioner of

Social Security denying her application for Disability Insurance Benefits under Title II of the

Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d).  Plaintiff is a former certified

nursing assistant whose reading and math abilities are at the fourth or fifth grade level.   On

May 12, 2005, she applied for Disability Insurance Benefits, alleging that she was unable to

work because of left leg problems remaining after back fusion surgery that affected her ability

to lift, carry and walk.  After a hearing, Administrative Law Judge Arthur Schneider denied

1

her application, finding that she was capable of performing simple, routine and repetitive work at the sedentary level and that such jobs existed in significant numbers in the national economy.

Plaintiff asks this court to reverse the administrative law judge's decision, arguing that he failed to provide discernible reasons for rejecting her subjective complaints,  considered only select portions of certain medical opinions in deciding that she could perform sedentary work and erred at step five of the sequential evaluation process in finding that she could make a vocational adjustment to jobs existing in significant numbers in the national economy.  Because I agree that the administrative law judge failed to make a reasoned credibility determination and did not explain why he rejected certain findings made by two occupational therapists that supported plaintiff's claim, I am reversing the commissioner's decision and remanding the case for further proceedings.  Because I am remanding the case for these reasons, I do not reach plaintiff's step five argument.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on September 29, 1961.  AR 233.  She graduated from high school but took special education classes.  AR 216, 233.  Her past relevant work was as a certified nursing assistant at a nursing home, where she worked for 15 years.  AR 19, 250.

2

Plaintiff injured her back at work on October 23, 2002.  On December 17, 2003, she saw Dr. Christopher Sturm, a neurosurgeon, reporting that she had had severe lower back pain and left leg radicular pain since the injury.  Dr. Sturm recommended that plaintiff have L4-5 and L5-S1 fusion surgery to correct the degenerative disk disease and spondylosis that had been revealed by radiographic studies.  Plaintiff elected to proceed with the surgery, which was performed on February 2, 2004.  AR 179-180.  When plaintiff was discharged from the hospital on February 6, 2004, she denied having any pain in her lower extremities. AR 120.

On March 4, 2004, plaintiff told Virginia Snyder, Dr. Sturm's physician assistant, that she was pleased with the results of the surgery because her symptoms had improved. Snyder noted that plaintiff continued to use her rolling walker when outside but was ambulating independently without difficulty at home.  Snyder indicated that plaintiff's sensory exam was normal and symmetric in the bilateral lower extremities.  Snyder encouraged plaintiff to stop using the rolling walker or any other type of assistive device to walk.  AR 171-172.

On May 3, 2004, plaintiff reported to Snyder that her symptoms were much improved after the surgery but that she was having intermittent left lower extremity radicular pain and mild low back pain.  An x-ray of plaintiff's lumbar spine taken that day showed no evidence of fusion or instrumentation failure.  Snyder noted that plaintiff was neurologically

3

intact.  Snyder indicated that plaintiff was ambulating independently without difficulty but chose to take her walker with her when walking long distances.  AR 167-168.

Snyder saw plaintiff again on July 6, 2004 and noted that plaintiff was continuing to have low back pain, although it was better than it had been before her surgery.  Plaintiff's primary complaint was of left lower leg "cramping" pain that occurred primarily with stretching, bending over or prolonged sitting.  Plaintiff reported that she had had a significant amount of discomfort and that her activity level had been affected by the pain.  AR 162-164.

Plaintiff went to 13 physical therapy appointments between July 13, 2004 and August 23, 2004 but made little improvement.   On August 24, 2004, plaintiff saw Snyder and reported continuing left lower extremity pain that occurred when she had increased her activity or maintained one position for a long time.   She reported that the pain was particularly bothersome at night and was interrupting her sleep.  Again, x-rays showed no problems with the fusion.  Snyder indicated that plaintiff was neurologically stable.  She prescribed Neurontin for her pain and referred her to the pain center for possible injections in the sacroiliac joints.  AR 159-161.

Snyder saw plaintiff again on October 12, 2004 and examined her.  Plaintiff had opted not to pursue the sacroiliac joint injections.  Snyder noted that plaintiff had mild tenderness to palpation in the bilateral paraspinal musculature, greater on the left side, and

4

mild tenderness to palpation in the bilateral sacroiliac joints.  AR 156.   On October 13, 2004, plaintiff had a computed tomography scan.  The study revealed post-surgical changes as well as an area of density that could represent a spicule of bone on the left sacroiliac nerve root and the thecal sac.  AR 112.

On November 2, 2004, plaintiff saw Dr. Sturm and reported left lower extremity radicular-type symptoms that were interfering with her quality of life and increased after activity.  Upon examination, plaintiff had normal motor strength and sensory function in her lower extremities, negative straight leg raising tests and a steady gait.  Dr. Sturm concluded that plaintiff was neurologically intact.  He advised plaintiff that the x-rays and scan showed no nerve root impingement associated with the pedicle screw implantation and no evidence of instrumentation or fusion failure.  He concluded that plaintiff's left leg pain was caused by the formation of epidural fibrosis (scar tissue) potentially in combination with some extradiskal fusion formation.   He referred her to the pain management center for transforaminal injections.  AR 153-154.

On December 9, 2004 and December 23, 2004, Dr. Gregory Love administered transforaminal nerve blocks at L5-S1 and L4-S1, respectively.  AR 106-07, 109.  Because plaintiff received no relief from these nerve blocks, Dr. Love gave plaintiff a left-sided sacroiliac joint injection on January 20, 2005.  AR 105.  On January 31, 2005, Dr. Love saw plaintiff and referred her back to Dr. Sturm because the injections did not decrease her pain.  AR 101.

5

On February 22, 2005, plaintiff saw Dr. Sturm, complaining of continued left leg radicular pain.  Plaintiff had full motor strength in her lower extremities and a steady gait but decreased sensation in her left foot.  Dr. Sturm concluded that plaintiff's pain might be the result of epidural fibrosis or might relate to the spicule of bone formation that appeared to have occurred with the fusion development.  He referred plaintiff to Dr. Khabbaz for electro-diagnostic studies of her lower left extremities.  AR 150-151.  These studies were performed on March 15, 2005.  AR 143-49.  Although the studies showed some evidence that "raised[d] the possibility"of a mild left L4-5 nerve root irritation, Dr. Khabbaz advised that "this finding should be taken cautiously given the fact that the patient was unable to relax and these was a lot of motor unit potentials contaminating the screen."  The studies did not show any evidence of peripheral neuropathy or an entrapment neuropathy in the left lower extremity.

On March 24, 2005, Dr. Sturm explained the results of the studies to plaintiff and her husband.  Dr. Sturm told them that he would not recommend surgery because the small bony spicule was not contributing to her symptoms.   Dr. Sturm continued plaintiff's prescription for Neurontin and encouraged her to use the TENS unit as needed.  He also encouraged plaintiff to avoid those activities or positions that seemed to reproduce or intensify pain in her lower extremities in order not to place tension on the nerve.  AR 141.

Dr. Sturm wrote a statement indicating that plaintiff could return to work for no more than two hours a day, with no repeated flexion or extension of the lumbar spine and

no pushing, pulling or lifting anything greater than 10 pounds.  He wrote, "These restrictions are placed in an effort to reintroduce the patient back to the work force. . ."  AR 141.

On May 12, 2005, plaintiff saw Snyder and reported that her employer was reluctant to accept her back with Dr. Sturm's restrictions.  Plaintiff reported that she was unable to obtain Neurontin because of her lack of funds and that she required a four-prong cane to walk.  Snyder noted that plaintiff had normal strength in her lower extremities but she was positive for straight leg raising on the left side and her sensation to light touch was decreased on the left.  Snyder also noted that plaintiff had difficulty rising to a standing position from a seating position.  AR 185-186.

On May 24, 2005, occupational therapists Sara Sennott and Monica Tomasello performed a functional capacity evaluation of plaintiff.  Although plaintiff demonstrated the ability to tolerate work activities at the sedentary work level (characterized by lifting up to 10 pounds occasionally, lifting a negligible amount frequently and no constant lifting), the therapists found her physical abilities and workday tolerance to be "extremely limited."  They wrote:

> For example, the client shows limited standing and walking tolerance, and requires a cane for safe ambulation (which limits her ability to carry safely).  The client does not tolerate sustained postures or repetitive tasks, and has significant pain with minimal exertion.  She may not tolerate work in competitive settings.

AR 195.

Sennott and Tomasello indicated that plaintiff's safe functional work abilities did not meet job demands.  AR 194.  They recommended that plaintiff participate in a physical therapy program that included flexibility, strengthening and aerobic conditioning but stated that strenuous work conditioning was not appropriate.  They indicated that plaintiff should avoid precarious balance situations, walk with an assistive device when able, maintain stable trunk postures and consider participation in a chronic pain program.

On June 13, 2005, Dr. Sturm completed a Workers' Compensation Practitioner's Report on which he concluded that plaintiff's work injury caused her a 22% permanent disability.  He stated that her prognosis was good but she would likely need pain management, physical therapy, work conditioning and vocational rehabilitation.  AR 202-03.

On June 20, 2005, Dr. Pat Chan, a  state agency physician, completed a Residual Physical Functional Capacity Assessment for plaintiff.  He found that because of her back pain and left leg pain, she could lift less than ten pounds frequently and ten pounds occasionally and could stand or walk two hours and sit six hours in an eight-hour work day.  AR 204-211.  This assessment was affirmed by a second medical consultant on July 28, 2005.  AR 211.

On July 26, 2005, plaintiff was seen for a vocational evaluation by Timothy Greenya, a rehabilitation counselor.  He tested plaintiff and found that her scores were compatible with the level of knowledge at the fourth or fifth grade level.  AR 219-220. He concluded that plaintiff had too many limitations to work in the general labor market.  AR 216.  He

8

wrote that, "low skill, simple and routine jobs at the sedentary level exist in very small numbers that do not constitute a stable labor market."  AR 220

## D.  Hearing Testimony

Plaintiff testified that she used a cane to walk when she went out of the house for balance and that she could not bend down or twist at the waist.  She testified that a nerve in her left leg is permanently damaged and that she has little strength in her left arm.  AR 239, 241.  Plaintiff explained that she does not have health insurance and that she gets her Flexeril and Neurontin from a free clinic.  AR 243-44.  Plaintiff lives with her husband and her 21-year old son who has a learning disability.  AR 245, 247.  She spends half of the day sitting in a recliner to alleviate her pain.  She goes to the library on occasion.  AR 244.

The administrative law judge called Catherine Anderson to testify as a neutral vocational expert.  AR 248.  He advised her as follows, "If in the testimony you're about to provide, if there's any conflict between your testimony regarding the occupational evidence and the information in the Dictionary of Occupational Titles, and its companion publication, the Selected Characteristics of Occupations, would you please tell us that in today's hearing?"  She responded, "Yes, I will."  AR 249-250.

Anderson testified that plaintiff's past work as a certified nursing assistant was defined in Dictionary of Occupational Titles as semi-skilled medium level work but plaintiff had performed the work at a heavy exertional level.  The administrative law judge asked

9

whether plaintiff's past work could be performed by an individual of plaintiff's age, education and work experience who was limited to work requiring lifting ten pounds occasionally, less than ten pounds frequently, standing for two hours and sitting six hours in an eight-hour work day.  Anderson testified that such an individual could not perform plaintiff's past work as a nursing assistant but could perform jobs as receptionist information clerk  (2,146 jobs in Wisconsin), general office clerk  (1,222 jobs in Wisconsin), production worker (2,102 jobs in Wisconsin) and interviewer (696 jobs in Wisconsin).

The administrative law judge then asked Anderson a hypothetical that limited the individual to routine and repetitive work.  Anderson testified that the number of jobs she had provided in answer to the first hypothetical included that restriction because they were all unskilled jobs.  AR 250-251.  Anderson testified that to perform unskilled work, an individual would require a fifth grade academic level.  AR 257.

The administrative law judge then asked whether an individual who had plaintiff's limited writing ability (as demonstrated by her writing on the physical capacities questionnaire) could perform these jobs.  Anderson testified that the limited writing ability would not reduce the number of interviewer or receptionist jobs but would reduce by 30% the number of general office clerk positions available.  AR  252.

For the next hypothetical the administrative law judge added a sit or stand option every ten minutes and restricted lifting to 5 pounds.  Anderson said that there was no work

that such an individual could perform because employers would not tolerate position changes at that frequency.  AR 252.

On cross-examination, plaintiff's lawyer asked Anderson to review the functional capacity evaluation completed by Sennott and Tomasello.  She testified that it would be "difficult" for a person to sustain competitive work if she had the limitations identified on that report.  In response to another question, Anderson testified that if a person had to use a cane when standing or walking, she would be unable to perform the office clerk and production jobs, but would likely still be able to perform the jobs of information clerk and interviewer.  Plaintiff's lawyer asked the expert if the individual could perform the jobs she had identified if the individual had to avoid forward bending at the waist, twisting at the waist, leaning back and side bending.  She answered that the general office clerk and production worker positions would be eliminated.

### E.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. § 404.1520.  At step one, he found that plaintiff had not engaged in substantial gainful activity since December 9, 2003.  At step two, he found that a plaintiff had severe impairments of back and leg pain. AR 15.  At step three, he found that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20

11

C.F.R. 404, Subpart P, Appendix 1, explaining that plaintiff did not satisfy the requirements of Listing 1.03 because there was no evidence that she suffered from any significant neurological deficits after her surgery.  AR 17.

At step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform sedentary work requiring lifting and carrying up to ten pounds, standing two hours in an eight-hour day and sitting two hours in an eight-hour day. He also found that plaintiff was available for simple, repetitive and routine work.  AR 17. In reaching this conclusion, the administrative law judge found that "plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not supported by the evidence."  AR 19.  He also indicated that he had given controlling weight to the portion of Dr. Sturm's March 24, 2005 assessment in which Sturm had found that plaintiff could lift and carry up to ten pounds, explaining that that finding was supported by the medical evidence.  However, he rejected that portion of Dr. Sturm's statement indicating that plaintiff could work only two hours a day, finding that it was not a permanent restriction but an attempt by Dr. Sturm to "reintroduce" plaintiff to the workforce.  AR 19.  The administrative law judge indicated perfunctorily that he had also given "substantial weight" to the functional capacity evaluation conducted by registered occupational therapists Sarah Sennott and Monica Tomasello on May 24, 2005 and to the assessment of the state agency physicians.  AR 19.

12

At step five, the administrative law judge found that plaintiff was not able to perform her past work but could perform a significant number of other jobs in the economy, namely receptionist or information clerk, general office worker, production worker and interviewer. In reaching this conclusion, the judge relied on the testimony of the vocational expert, finding it to be consistent with the Dictionary of Occupational Titles. AR 19.


OPINION

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).

In order to conduct this deferential review of the commissioner's decision, however, the court must first be able to comprehend how that decision was reached. "Regardless

13

whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). To permit informed review, the administrative law judge must "build a logical and accurate bridge from the evidence to his conclusion" by "articulat[ing], at some minimum level, her analysis of the evidence." Dixon v. Massanari, 270 F.3d 1171,1177 (7th Cir. 2001). Although an administrative law judge need not discuss every piece of evidence or write a "perfect" opinion, Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989), she must "provide some glimpse into her reasoning." Dixon, 270 F.3d at 1177; see also Motor Vehicles Mfg. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (administrative law judge can satisfy his burden if path of his reasoning "may reasonably be discerned") (quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., 419 U.S. 281, 286 (1974)). When the administrative law judge fails to issue a reasoned decision, the court must remand the case to the agency unless it is plain that the outcome would not change on remand. Keys v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003) (harmless error doctrine applies to administrative decisions); Sahara Coal Co. v. Office of Workers Compensation Programs, 946 F.2d 554, 558 (7th Cir. 1991)("If the outcome of a remand is foreordained, [the court] need not order one").

Because subjective symptoms, such as pain, are at once unverifiable and suggestive of a greater severity of impairment than objective evidence alone, administrative law judges

14

adjudicating disability applications must evaluate a claimant's subjective complaints with great care.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996).  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004).  Instead, the administrative law judge must consider the "entire case record" to determine whether the individual's statements are credible.  SSR 96-7p.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c).  See also Scheck, 357 F.3d

15

at 703; <u>Zurawski</u>, 245 F.3d at 887.  In keeping with the articulation requirement, the administrative law judge's decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Social Security Ruling 96-7p.

There is little dispute in this case that plaintiff's subjective complaints are out of proportion to the objective medical evidence.  Her doctors have deemed her fusion a success and have found little that would explain the pain she continues to have in her left leg and lower back.  As SSR 96-7p makes clear, however, the lack of objective evidence is not dispositive.  The administrative law judge was required to delve further and consider the entire case record to determine whether to credit plaintiff's subjective complaints.

As is too often the case with Judge Schneider's decisions, his credibility assessment falls below the mark.  The relevant portion of his decision, in characteristic fashion, reads as follows:

> The claimant stated that her back condition was caused by her past work as a certified nursing assistant.  On December 5, 2005, the claimant and her past employer reached a compromise agreement concerning the claimant's claim of a work-related injury which occurred on October 24, 2002.

> In a disability report, the claimant stated that she could not lift or carry.  She noted that she had numbness in her legs and used a cane to walk.

16

On May 3, 2004, physician's assistant Virginia Snyder observed that the claimant was walking independently without difficulty.  She noted that the claimant "chooses" to take a walker with her when walking for long distances. Physician's assistant Snyder urged the claimant to discontinue using a rolling walker or any other type of assistive device.

On May 12, 2005, J. Wysocki, a disability claim's [sic] interviewer, observed that the claimant moved stiffly and walked with a cane.  Claim's [sic] interviewer Wysocki noted that the claimant shifted her weight in her chair and supported herself as she sat and stood.

On May 12, 2005, physician's assistant Snyder observed that the claimant was using a 4-point cane to walk.  She observed that the claimant seemed to have trouble getting herself in an upright position.

On May 25, 2005, the claimant stated that she lived in a house with her family.  She stated that she spent her days trying to do simple household chores, cooking, and walking.  The claimant alleged that she took breaks during most of her activities because of her pain.  She said she had a lot of pain walking, climbing stairs, doing prolonged standing (such as when she washed dishes) and doing laundry.

The claimant stated that she could drive a car, go grocery shopping, and visit friends as well as family.  She said she occasionally provided care for her grandson.

The claimant alleged that her sleep was interrupted by pain.  She estimated that she could sit for about 20-30 minutes, stand for about 10 minutes and walk for about 15 minutes at a time.  She said that she occasionally needed help putting on her socks and shoes because she had difficulty bending and reaching.  The claimant stated that she needed to use a cane to walk.

On June 13, 2005, Dr. Sturm rated the claimant at a 22% permanent partial disability because of her back condition.  He rated the claimant's prognosis as "good".

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms
are not supported by the evidence.

To the extent this purports to be a credibility determination, it defies informed review.  It

amounts to a recitation of the evidence and a conclusion, with no explanation in between.

Reciting the record merely states the obvious.  To enable a court to perform its role in the

administrative system (and to assure the claimant that her claim was reviewed fully and

fairly), the administrative law judge must explain *how* that evidence was weighed, or more

important, *why* the judge thought certain evidence detracted from plaintiff's credibility.  For

example, although Administrative Law Judge Schneider appears to have recognized that

plaintiff's cane use was a significant issue, he never explains how he resolved it.  Did he

conclude from Snyder's May 3, 2004 report that plaintiff did not need a cane?  Or did he

conclude from plaintiff's testimony and the observations by Snyder and the claims examiner

a year later that plaintiff did need a cane?  Similar questions exist with respect to his

evaluation of plaintiff's testimony.  Did the administrative law judge reject plaintiff's

testimony about her sitting, standing and walking limitations, or did he find that she could

perform sedentary work even if that testimony was accepted?  Did he accept plaintiff's report

that her daily household activities were punctuated with rest, or did he find that plaintiff was

lying on that point?  Or did he find that *none* of plaintiff's reported limitations were credible

because Dr. Sturm endorsed only a 22% disability rating and said her prognosis was "good?"

The answers to these questions are anybody's guess.

18

The commissioner asserts that the administrative law judge "noted that the two-year lapse in medical treatment following Dr. Sturm's June 2005 worker's compensation opinion tends to undermine Plaintiff's claim that she was experiencing debilitating low back and leg pain." Not only did the administrative law judge say nothing of plaintiff's lack of treatment in his discussion of plaintiff's credibility, but he said none of the words cited by the commissioner. What he said (after discussing the objective medical evidence) was that there was "scant evidence that the claimant sought medical treatment for her back pain in 2006 or 2007," adding "[t]he claimant's back pain seems to have stabilized." AR 17. Thus, it appears the administrative law judge was referring to the lack of medical treatment as support for his conclusion that plaintiff's back pain had stabilized, not as a fact detracting from plaintiff's credibility. Indeed, if the administrative law judge *was* discrediting plaintiff for her lack of treatment, then he was required to reconcile that finding with plaintiff's testimony that her worker's compensation carrier had stopped paying for medical visits and she had no health insurance. SSR 96-7p (before drawing adverse inference from plaintiff's failure to pursue medical treatment, administrative law judge must first consider individual's explanation or other evidence in record that shows why treatment not sought). In either case, the administrative law judge's finding regarding plaintiff's lack of treatment fails to provide reasonable support for his credibility determination.

The commissioner also points out that the administrative law judge relied on the opinions of Dr. Sturm and occupational therapists Sennott and Tomasello that plaintiff was

capable of performing sedentary work.  It is true that statements from medical sources are relevant to the credibility determination and that the administrative law judge gave "significant weight" to these reports.  However, as plaintiff points out, neither Dr. Sturm's statement nor the functional capacity evaluation by Sennott and Tomasello undermines the credibility of plaintiff's allegation that she cannot work.   Although the occupational therapists found plaintiff able to meet the *exertional* demands of sedentary work, they questioned in the "Recommendations" portion of their report whether plaintiff could meet the demands of competitive employment, noting that plaintiff's pace was slow and her tolerance for sustained activities was limited.  The vocational expert agreed that competitive employment would be difficult for an individual with the various limitations noted by Sennott and Tomasello.  Yet the administrative law judge said nothing of plaintiff's pace and tolerance limitations, treating the finding that plaintiff could meet the exertional demands of sedentary work as if it were the equivalent of a finding that plaintiff could perform the work on a full-time basis.  This was either a significant omission or a serious logical flaw.  To be found not disabled, plaintiff had to be capable, at minimum, of meeting the physical and mental demands of unskilled, sedentary work on a 40-hour a week basis.  Social Security Ruling 96-8p; see also 20 C.F.R. § 404.1545.  The recommendations made by Sennott and Tomasello provided significant evidence that plaintiff was not able to do this.  Unfortunately, this court does not know how or whether the administrative law judge weighed these recommendations because he never mentioned them.

Similarly, although Dr. Sturm indicated in his March 24, 2005 statement that plaintiff was capable of meeting the exertional demands of sedentary work, he never indicated that he could perform such work on a full-time basis.  Indeed, at the same time he indicated that plaintiff could perform sedentary work, he limited plaintiff to working two hours a day.  Although the administrative judge reasonably declined to adopt Dr. Sturm's two-hour-a-day limitation on the ground that it appeared to be a temporary limitation designed to reintroduce plaintiff to the workforce, the remainder of Dr. Sturm's statement simply does not suggest one way or the other whether plaintiff can perform sedentary work on a sustained basis.  Thus, to the extent he relied on Dr. Sturm's March 24, 2005 statement as a basis for finding plaintiff's subjective complaints not credible and for denying her application, the administrative law judge erred.

In sum, the administrative law judge committed two errors:  1) he made a conclusory credibility assessment and 2) he took an overly simplistic view of the treating source statements regarding plaintiff's work abilities.  As a result, this court is left to wonder how he resolved the key issue in this case, which is not whether plaintiff can meet the exertional demands of sedentary work, but whether she can perform it five days a week, eight hours a day.  (Although plaintiff argues that there is evidence that she has additional postural and mental limitations that the administrative law judge failed to discuss, it appears from the vocational expert's testimony that these limitations would not prevent her from performing

21

some unskilled, sedentary jobs.)  Accordingly, this case must be remanded.  This is not to suggest that plaintiff is disabled; that is a determination that the commissioner must make in the first instance.  As it stands, however, the commissioner's decision lacks the clarity and precision necessary to enable this court to "perceive that [the agency] has heard and thought and not merely reacted."  <u>Sosnovskaia v. Gonzales</u>, 421 F.3d 589, 592 (7th Cir. 2005) (internal quotation marks and citations omitted).

As a final observation, I note that this is the latest of many opinions in which this court has been critical of Administrative Law Judge Schneider's failure to issue a well-reasoned decision.  <u>See</u> <u>e.g.</u> <u>Kurth v. Astrue</u>, 08-cv-0046-bbc, Opinion and Order, July 30, 2008 (administrative law judge failed to conduct critical review of evidence or build accurate and logical bridge from evidence to conclusion); <u>Mason v. Astrue</u>, 07-cv-0191-bbc, Opinion and Order, March 28, 2008 (administrative law judge's decision was "long on recitation and short on rationale"); <u>Martin v. Astrue</u>, 07-cv-186-bbc, Opinion and Order, October 4, 2007 (administrative law judge "employed questionable logic" in determining plaintiff's onset date); <u>Becvar v. Astrue</u>,07-cv-136-bbc, Opinion and Order, September 18, 2007 (administrative law judge failed to identify specific listings he was considering, failed to discuss statements of plaintiff's lay witnesses, failed to discuss credibility factors set out in Social Security Ruling 96-7p and failed to state basis for his conclusion that plaintiff could perform range of sedentary work activity); <u>Vreeland v. Astrue</u>, 06-C-466-C, April 19, 2007

22

(many reasons for administrative law judge's credibility determination were based on misstatements of record or specious logic) (report and recommendation); <u>Leonard v. Barnhart</u>, 06-C-207-C, December 4, 2006 (administrative law judge failed to build accurate and logical bridge between evidence and credibility determination in fibromyalgia case) (report and recommendation); <u>Olson v. Barnhart</u>, 06-C-204-C, September 25, 2006 (administrative law judge issued "misguided" and unreasoned decision in fibromyalgia case) (report and recommendation).  Although the court understands that administrative law judges for the  Social Security Administration face staggering workloads, that understanding cannot excuse these repeated failures.  To borrow a phrase from the court of appeals, "[d]eference is earned; it is not a birthright." <u>Kadia v. Gonzales</u>, 501 F.3d 817, 821 (7th Cir. 2007).  When the court is left to guess what the administrative law judge was thinking, remand is the likely result.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is REVERSED AND REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

Entered this 11th day of August, 2008.

BY THE COURT:

/s/
_____

BARBARA B. CRABB
District Judge